# CIRCUIT COURT OF THE CITY OF CHARLOTTESVILLE

Pamela H. Brownfield

v.

Robert P. Hodous
and Payne Hodous, L.L.P.

March 3, 2011

Case No. CL09-183

BY JUDGE MARY JANE HALL

The matter came before the Court on (i) Defendant's motion to determine applicability of attorney-client privilege to certain documents that were produced inadvertently by Plaintiff's counsel and over which Plaintiff asserts a claim of privilege, and (ii) Plaintiff's motion to compel production of privileged communications between Defendants and Kim Heischman for the purpose of providing legal advice to Heischman personally or for the purpose of providing legal advice to Ivy Gardens, L.L.C., a business entity in which Plaintiff owns no interest. Plaintiff denies that such communications are privileged as to her, based on the alleged joint representation by Defendants of Heischman and Plaintiff. The Court holds (i) that the inadvertently produced documents are subject to the attorney-client privilege; and (ii) the motion to compel privileged documents, or alternatively to conduct an *in camera* review of those documents, is denied.

*Factual Background*

The first motion relates to documents that were filed under seal as Exhibit 1 to Defendants' Motion to Determine Applicability of Attorney-

Client Privilege, filed on July 20, 2010. At an evidentiary hearing conducted on January 25 and 26, 2011, Plaintiff testified that she prepared notes on the documents included within Exhibit 1 in preparation for a meeting with her lawyer, Ed Lowry, within a day or two before that meeting. She testified that her husband may have reviewed these handwritten notes and that her husband was present during the meeting with Mr. Lowry. Plaintiff left the documents with her hand-written notations with her lawyer, and the law office thereafter inadvertently included the documents in a production to Defendants.

At the conclusion of the hearing, based on the evidence presented and the arguments of counsel, the Court found that the documents and the handwritten notations thereon were intended to be privileged communications to Plaintiff's lawyer and that they should be protected by the attorney-client privilege and the inadvertent disclosure rule, *unless* the presence of Plaintiff's husband at the meeting with Mr. Lowry eliminated the required confidentiality and thus defeated the privilege as a matter of law. The parties have briefed that issue at the Court's request.

The second motion seeks the production of confidential communications between Defendants and Kim Heischman, Plaintiff's brother. Plaintiff does not dispute the existence of an attorney-client relationship between Defendants and Heischman, but she asserts that Defendants represented her jointly and that communications between a lawyer and one jointly-represented client are not privileged as to other jointly-represented clients.

*Discussion*

A. *Motion to Determine Applicability of Privilege*

Defendants' motion presents an issue of apparent first impression in Virginia: does the presence of a husband at an otherwise confidential meeting between his wife and her attorney destroy the confidentiality required by the attorney-client privilege and thus open the door to discovery of communications exchanged in the meeting?

Friend's treatise states the general rule:

> Communications made to the attorney in the presence of third persons are usually not privileged, the reasoning being that the presence of such third persons shows that the communication was never intended to be confidential. . . . It should be noted, however, that the presence of interpreters, employees of the attorney, or, in some cases at least, close relatives of the client has been held not to destroy the privilege.

Charles E. Friend, *The Law of Evidence in Virginia*, § 7-3 (6th ed. 2003).

Little case authority addresses this issue. Plaintiff relies upon the legal principle articulated in the Restatement of the Law, Third, The Law Governing Lawyers § 71 (comment b):

> The presence of a stranger to the lawyer-client relationship does not destroy confidentiality if another privilege protects the communications in the same way as the attorney-client privilege. Thus, in a jurisdiction that recognizes an absolute husband-wife privilege, the presence of a wife at an otherwise confidential meeting between the husband and the husband's lawyer does not destroy the confidentiality required for the attorney-client privilege. . . .
>
> [C]ourts almost invariably inquire into whether a reasonable person would have expected the communication to reach only other privileged persons in the circumstances and not into the actual, subjective state of mind of the communicating person.

*Id. See also, United States v. Rothberg*, 896 F. Supp. 450, 454, and n. 7 (E.D. Pa. 1995) ("Defendant asserts that his alleged conversation with his attorney about the possibility of a fire at the club was subject to attorney-client privilege. [Defendant's wife] testified that this conversation took place in her presence. Because of spousal confidentiality, it was ruled that there was no third-party waiver"); *In re Grand Jury Subpoenas Dated March 24, 2003*, 265 F. Supp. 2d 321, 332, n. 51 (S.D. N.Y. 2003) ("That Target's spouse was present during some of these conversations does not destroy any applicable privilege").

Contrary authority supports Defendants' request for a determination that no privilege attached to Plaintiff's writings despite the fact that the third party was her spouse. *See, e.g., People v. Allen*, 104 Misc. 2d 136, 427 N.Y.S.2d 698, 699 (N.Y. App. Div. 1980); *Baeder v. Fourth of July Celebration Comm., Inc.*, 2007 Conn. Super. LEXIS 204 at *5-6 (Conn. Super. 2007).

The Colorado Supreme Court articulated an accurate observation on the state of the law on this issue: "We observe, however, that the effect of a spouse's presence on a communication between attorney and client is not entirely clear." *In re Wesp*, 33 P.3d 191, 199, n. 13 (Colo. 2001).

Defendants argue that the marital privilege available to Plaintiff under Virginia law does not protect the subject communications because Mr. Lowry's presence defeated that privilege. The relevant inquiry, however, is not whether the handwritten notes are claimed to be a confidential communication between husband and wife in this case but merely whether Virginia recognizes a spousal privilege "that protects the communications

in the same way as the attorney-client privilege." Restatement of the Law, Third, The Law Governing Lawyers § 71 (comment b). Virginia does indeed recognize such a privilege. The Court finds that Plaintiff intended that the communications would remain confidential and did not manifest any contrary intent by permitting her husband to review the documents or attend the meeting.

Given the unsettled state of this law and the relative scarcity of guiding case authority, the Court resolves the issue in favor of protecting the attorney-client privilege. Based on the facts and circumstances of this case, because Virginia does recognize the husband-wife privilege codified at Virginia Code § 8.01-398, the presence of Plaintiff's husband does not destroy the confidentiality required for the attorney-client privilege.

## B. *Motion to Compel Attorney-Client Communications*

The Second Amended Complaint alleges that Defendants represented Plaintiff along with her brother and sister in matters relating to her late father's estate and management issues surrounding his real estate properties. Defendants deny that they represented Plaintiff and claim that they have represented only Heischman in those matters. The existence or non-existence of an attorney-client relationship between Plaintiff and Defendants is a jury issue to be adjudicated at the hearing on Defendants' Plea in Bar.

Having asked for a jury trial on the issue of whether Defendants represented Plaintiff for purposes of the Plea in Bar, Plaintiff now asks for the Court to make the very same factual determination for purposes of the motion to compel. The Court declines to conduct the evidentiary hearing that would be required in order to reach such a determination, inasmuch as it would exactly duplicate the task for which a jury is going to be empaneled.

Plaintiff also argues that Defendants have put the existence of an attorney-client relationship with her at issue with their Counterclaim, in which they steadfastly maintain that no such relationship exists. She draws an analogy to a personal injury plaintiff who puts her health at issue and thereby waives the physician-patient privilege over her medical records. In such a scenario, however, the personal injury plaintiff only forfeits the privilege as to her own medical records, not as to the records of other patients who treat with the same physician. The Court agrees that Defendants may not assert any privilege as to communications between them and Plaintiff, in light of the allegations of the Counterclaim; but those allegations do not put their relationship with Heischman at issue.

Plaintiff cites no authority for the proposition that a lawyer who denies having jointly represented one client thereby forfeits the privilege that belongs to his other client. The mere allegation of a joint relationship

by a party seeking discovery from a lawyer does not overcome the attorney-client privilege over that lawyer's communications with his client.

Plaintiff also proposes that the Court conduct an *in camera* review of Defendants' communications with Heischman for the purpose of determining whether any of these documents support her claim of joint representation. The documents that Defendants have withheld from production, according to their Memorandum in Opposition to Motion to Compel (filed January 18, 2011), include: (1) documents constituting communications between Heischman and Hodous for the purpose of legal advice given to Heischman personally; and (2) documents constituting communications between Heischman and Hodous for the purpose of legal advice given to Ivy Gardens, L.L.C., a business interest in which Plaintiff holds no interest. Plaintiff has not demonstrated how those communications with one sibling would tend to prove that Defendants also represented the other siblings. Plaintiff argues:

> Plaintiff therefore seeks discovery of communications between Defendants and K. Heischman, as those communications would be probative of whether Defendants understood themselves to represent all three siblings jointly and also because those communications would likely establish that Defendants did in fact counsel K. Heischman to proceed in a manner prejudicial to his two siblings.

Plaintiff's Memorandum of Law in Support of Two Final Issues Arising During the January 25-26 Hearing, p. 10 (filed February 9, 2011).

Defendants oppose an *in camera* review, arguing that such a review itself violates the privilege. Disclosure of allegedly privileged materials to a court for purposes of determining the merits of a claim of privilege, however, does not have the legal effect of terminating the privilege and has been approved by many courts. *See United States v. Zolin*, 491 U.S. 554, 568-69 (1989), and cases cited therein.

The Court has located no case authority addressing the showing required to entitle a party claiming joint representation to an *in camera* review of the privileged documents of his adversary. *United States v. Zolin*, 491 U.S. 554, involved an *in camera* review of privileged documents in order to make the preliminary determination of whether the crime-fraud exception to the attorney-client privilege applied. The United States Supreme Court articulated the following standard, which offers guidance in the case at bar:

> Before engaging in *in camera* review to determine the applicability of the crime-fraud exception, the judge should require a showing of a factual basis adequate to support a good

faith belief by a reasonable person that *in camera* review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies. Once that showing is made, the decision whether to engage in *in camera* review rests in the sound discretion of the district court. The court should make that decision in light of the facts and circumstances of the particular case, including among other things, the volume of materials the district court has been asked to review, the relative importance to the case of the alleged privileged information, and the likelihood that the evidence produced through *in camera* review, together with other available evidence then before the court, will establish that the crime-fraud exception does apply.

*Id.* at 572.

Plaintiff has filed a number of documents that she characterizes as examples of her seeking and Defendants' providing legal advice to all three siblings jointly, and she proffers that substantially more similar examples have already been exchanged in discovery. She does not indicate why or how the documents that Defendants have withheld are likely to establish the existence of a joint representation. Her examples constitute, as one might expect, correspondence from Defendants to all three siblings or notes made at meetings attended by Defendants and the siblings. The existence of those documents does not necessarily suggest that correspondence exchanged only with Heischman will establish that the representation was joint.

The Court finds that Plaintiff has not made a sufficient showing that privileged communications between Defendants and Heischman are likely to establish that Defendants jointly represented her along with her brother. The jury will be asked to determine that question at the conclusion of the evidentiary hearing on the Plea in Bar, and Plaintiff may at that time seek to compel production of the correspondence if she prevails. On the present record, however, the Court lacks a basis to determine that *in camera* review of correspondence between Heischman and Defendants will establish that the representation included Plaintiff.

Both parties cite frequently to Virginia's own guru on the attorney-client privilege, Tom Spahn. Mr. Spahn writes: "In today's highly nuanced legal world of fact-intensive analyses and judicial balancing tests, the attorney-client privilege stands nearly alone in offering a legal absolute." Thomas E. Spahn, *The Attorney-Client Privilege and the Work Product Doctrine: A Practitioner's Guide*, § 1.501 (Va. Law Foundation, 2007). The Court is reluctant to violate a privilege recognized as a legal absolute without a clear basis, which has not been presented in support of Plaintiff's motion to compel.

Plaintiff's motion to compel is denied.

This matter is set for jury trial on Defendants' Plea in Bar on April 7, 2011. Counsel are directed to exchange proposed jury instructions with a copy to the Court on or before March 30, 2011. Each set of jury instructions should include a clean copy of the instruction titled "Instruction No. ___", together with a duplicate copy that includes the relevant authority supporting the instruction and an identification of the party who offers the instruction.